UNITED STATES of America, Plaintiff,

v.

David **LOSOVSKY**, Defendant.

No. 06 Cr. 857.

United States District Court, S.D. New York.

Aug. 4, 2008.

### *Decision and Order*

VICTOR MARRERO, District Judge.

Defendant David Losovsky ("Losovsky") pleaded guilty before this Court on three counts of an indictment charging him and several other co-conspirators with participation in a fraudulent border room scheme involving investments in foreign currency. In connection with Losovsky's sentencing, the Government has submitted a motion recommending that the Court sentence him in light of the factors set forth in Section 5K1.1 of the Sentencing Guidelines. Having considered the Government's letter detailing the nature and extent of the defendant's assistance in light of the considerations in Section 5K1.1 of the Sentencing Guidelines, the Court grants the Government's motion for a downward departure.

The Court takes note that the Government has evaluated the Losovsky's cooperation to be truthful, complete and reliable. The government has indicated that the Losovsky has provided substantial and timely assistance in the investigation and prosecution of a boiler room scheme called Holston, Young, Parker, and Associates, of which Losovsky was a co-conspirator. At Holston, the co-conspirators defrauded the public by soliciting investments purportedly for the purpose of trading in the foreign exchange market. Holston was a significant and serious fraud, which affected more than 230 investors and caused more than $6,500,000 in losses. The Government indicated in its letter that the information provided by Losovsky and his willingness to testify greatly assisted the Government in obtaining guilty pleas from at least ten of the Holston co-conspirators. Thus, the Court recognizes that Losovsky's substantial cooperation has contributed significantly to the Government's ability to investigate and prosecute alleged criminal activity.

As the commentary to Section 5K1.1 makes clear, the Court grants substantial weight to the Government's evaluation of the extent of the defendant's assistance. Accordingly, the Court finds that a downward departure is warranted in this case when considering the factors set forth in Section 5K1.1 of the Sentencing Guidelines.

Subsection (a)(1) of 18 U.S.C. § 3553 requires that courts take into consideration "the nature and circumstances of the offense and the history and characteristics of the defendant." Losovsky, as a co-conspirator at the Holston boiler room, was directly responsible for successfully inducing sixteen (16) victims to send money to Holston, which accounted for in excess of $497,000 in total losses.

Subsection (a)(2) of 18 U.S.C. § 3553 requires that the Court consider the need for the sentence to promote certain objectives of the criminal justice system, namely: punishment, specific and general deterrence, and rehabilitation. The Court notes that the offenses in this case were particularly serious because they significantly undermined investors' trust in our financial services industry and negatively affected the economy.

The sentencing of Losovsky raises the peculiarly vexing difficulties courts always confront in endeavoring to formulate a just sentence for a defendant who cooperates with the Government, and whose assistance is instrumental in the prosecution and conviction of other offenders. Indisputably, cooperators play a vital role in the Government's law enforcement efforts. Their assistance provides the Government with a powerful means to solve crimes and thereby to promote justice for the offenders, their victims and the larger society. But, ordinarily the aid cooperators render comes at a heavy personal price. They

may open themselves to prosecution for additional criminal activities they disclose that the Government might not otherwise uncover. Frequently, they place at risk their own liberty, security and safety, and endanger close family and other interests as well. Quite understandably, therefore, cooperators harbor legitimate expectations that their efforts and sacrifices will be appreciated by the Government, and properly recognized and rewarded by the sentencing judge.

Typically, in this Court's experience, the expectation cooperators express to the courts in essence holds that cooperation should equate to time served or no incarceration, and more specifically that a term of probation should generally suffice as a measure of proper justice in the case of those who commit crimes and then choose to assist the Government's prosecution of other offenders. But this outlook perhaps springs more from devout hope than from experience, for it presents an unrealistically narrow view of the multiple imperatives of sentencing, and nothing in the empirical record supports a view that the proposition enjoys wide currency among sentencing courts. In fact, courts cannot accord to defendants' assistance to the government the virtually categorical absolution cooperators commonly advocate. Several compelling reasons why courts generally reject such an approach stand out. They warrant repetition in this case in view of the numerous defendants this Court has already sentenced for the underlying offense, and taking into account the seriousness of the wrongdoing, as well as the large number of victims and the extensive losses they suffered.

By focusing solely on the perspective of the cooperator, the broad argument for mere probation, or a relatively brief amount of time served, either overlooks or unduly minimizes other critical consider-ations that must also weigh heavily in the Court's calibration of a sufficient penalty in any given case. Were sentencing courts in all cases to take into account solely or even predominantly a cooperator's individual reasons for urging to be spared from imprisonment, cooperation with the Government would become a talisman, an automatic get-out-of-jail card. In effect, the offenders would be assured of little more than nominal punishment, essentially superseding other vital elements of sentencing: how heinous the crime, how extensive the defendant's criminal history or continuing risk to the community, how large the number of victims and the impact of the wrongdoing on them, and how extensive the potential adverse implications of an excessively lenient sentence on the justice system and the larger society.

A sentencing practice known to reward defendants with such high level of relief and comfort at sentencing could substantially alter the stakes and tip the scales of the risk/reward calculus of crime, pushing the gamble well into the range of values at which crime would be deemed to pay. Any would-be offender who knew that he could commit a crime with others and, having acquired sufficient fruits of the deed, then turned himself into a cooperator practically assured of probation of a brief period of time served, would have a powerful incentive to cross the line. This prospect would raise particular inequities in some circumstances. In particular, instances of such unfairness arise when it is the leader or high-ranking manager of an unlawful enterprise who, having set the criminal wheels in motion, later turns against the lesser cogs in the operation and at sentencing is allowed freedom through probation or time served, while the co-defendants he recruited and guided in crime are sentenced to substantial prison terms. The prospect of automatic probation or release for cooperators would

also pose inequities in circumstances where the cooperator, as was the case here, possesses the means to secure release on bail, and thus serves no time at all in custody, while less fortunate co-defendants spend lengthy terms in pretrial detention ultimately disproportionate to their roles in the offense and to the cooperator's punishment.

In this case, the Court considers that Losovsky's offense was sufficiently serious; that the number of his victims and the amounts of their losses was significant; and that other co-defendants already sentenced for lesser roles in the offense received significant terms of imprisonment. These circumstances would render a term of mere probation without any time in custody for Losovsky, despite his cooperation with the Government, unwarranted.

In balancing the various interests and concerns discussed above, and taking into consideration as well the nature and circumstances of the offense, history and characteristics of the defendant and the sentencing factors listed in 18 U.S.C. § 3553(a), the Court has determined that for Losovsky a term of six years of probation, with a condition of six months of intermittent confinement on nights and/or weekends in an appropriate facility determined by the Bureau of Prisons, and six months of home confinement, is reasonable, in that such a sentence is "sufficient, but not greater than necessary" to comply with the proper objectives of sentencing. 18 U.S.C. § 3553(a).

**SO ORDERED.**